# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| RUFUS HAMPTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 5:24-cv-01485-SGC |
| | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Rufus Hampton, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). (Doc. 1).[2] Hampton timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 13).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's CM/ECF document management system and appear in the following format: (Doc. __ at __). Citations to the administrative record (Doc. 10) refer to the page numbers assigned by the Commissioner and appear in the following format: (Tr. at __).

## I.  Background

### A. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). A claimant must also show he was disabled between his alleged onset disability date and his date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") follows a five-step analysis to determine whether an individual is eligible for disability benefits:

1. The Commissioner determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; otherwise, the Commissioner proceeds to the second step.

2. The Commissioner then determines whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. If there is no severe impairment, the claimant is not disabled; otherwise, the Commissioner proceeds to the third step.

3. Next, the Commissioner determines whether the claimant's impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is disabled, and the claim is

2

granted; otherwise, the Commissioner determines the claimant's residual functional capacity ("RFC") and proceeds to the fourth step.

4. The Commissioner then compares the claimant's RFC with the mental and physical demands of the claimant's past relevant work. If the claimant can perform past relevant work, the claimant is not disabled; otherwise, the Commissioner proceeds to the final step.

5. At the fifth step, the Commissioner determines whether the claimant can perform any other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled, and the claim is denied. If not, the claimant is disabled, and the claim is granted.

*See* 20 C.F.R. § 404.1520(a) and (b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

## B.  The ALJ's Decision

Hampton applied for benefits in July 2022, claiming he became disabled on April 15, 2022, when he was 60 years old. (Tr. at 11, 22). His application was denied, and he requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 73, 83). At the March 2024 hearing before the ALJ, Hampton testified he last worked in April 2022 but left that job because he had health issues, including diabetes and prostate cancer. (*Id.* at 43). He previously worked as an electrician for 22 years. (*Id.* at 42). At the time of the hearing, he lived with his wife. (*Id.*). He suffers from bladder issues following prostate surgery and pain and numbness in his hand from carpal tunnel syndrome. (*Id.* at 44-45). Hampton does not complete household chores because his wife does them, but he testified he could wash

clothes, prepare meals such as TV dinners, and vacuum. (*Id.* at 46). He cannot pick up coins off a table or twist the cap off a water bottle with his right hand. (*Id.*).

Following the hearing, the ALJ denied Hampton's claim. (*Id.* at 10-23). The ALJ first found Hampton met the SSA's insured requirements through December 31, 2027, and did not engage in substantial gainful activity after the alleged onset date of April 15, 2022. (*Id.* at 13). At the second step, the ALJ determined Hampton had the following severe impairments: right carpal tunnel syndrome and prostate cancer. (*Id.*). At the third step, the ALJ determined Hampton's medically determinable impairments did not meet or medically equal the severity of one of the Listings. (*Id.* at 17). Before proceeding to the fourth step, the ALJ found Hampton's impairments could reasonably be expected to cause some of his alleged symptoms but his statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 18-19). The ALJ determined Hampton had the following RFC: "[He can] perform medium work as defined in 20 CFR 404.1567(c) except can frequently handle and finger with the right upper extremity." (*Id.* at 18).

When Hampton initially filed for benefits, he reported limitations in his ability to work because of prostate cancer and type 2 diabetes. (*Id.* at 203-04). His report of daily activities initially indicated he was limited only in lifting, but he

later added limitations in squatting, bending, kneeling, completing tasks, and using his hands. (*Id.* at 244). He also reported difficulty in completing tasks because of hand and stomach pain. (*Id.*).

State Agency medical consultant James E. Cantrell, MD, initially reviewed Hampton's case. Via an opinion dated October 17, 2022, Dr. Cantrell found Hampton suffered from medically determinable impairments ("MDI") of prostate cancer and type 2 diabetes. (*Id.* at 59). Dr. Cantrell assessed the MDIs as non-severe and opined that Hampton was not disabled. (*Id.* at 59-60).

Hampton had a right carpal tunnel release procedure in April 2023. (*Id.* at 456). In follow up visits, Hampton reported improvement in symptoms and functioning, and by December 2023, he was doing "fairly well" per Dr. Yu's notes. (*Id.* at 456). Hampton also complained about persistent numbness in the median nerve, but sensation in his thumb was improving. (*Id.*). He continued to have discomfort in his palm with grasping activities and occasional discomfort to the medial elbow that radiated into his forearm. (*Id.*). Dr. Yu reported:

> The patient's preoperative median nerve anesthesia appears to have plateaued. He may have had subjective improvement in the thumb. Overall, he does not appear to have any worsening carpal tunnel symptoms. We discussed that it is possible he could have permanent numbness in the median nerve distribution given the severity of his presentation. However, we will continue to monitor for now.
>
> He has hand pain that appears to be more related to a ring trigger finger. We discussed proceeding with a corticosteroid injection which could help significantly with his symptoms. He would like to proceed

> with the injection today. Lastly, he has findings consistent with new onset medial epicondylitis. We discussed that the vast majority [of] cases will improve with conservative treatment including NSAIDs both oral and topical, ice, heat, bracing, and home exercises.

(*Id.* at 457-58). Dr. Yu's treatment plan consisted of a three-month follow-up visit. (*Id.*).

In August 2023, Hampton was seen by State Agency consultive examiner Valerie Sanford, CRNP. (*Id.* at 450). Hampton reported to Ms. Sanford that (1) he was unable to lift objects because of lower abdominal pain, (2) the carpal tunnel surgery resulted in minimal improvement, and (3) he had difficulty squeezing objects but could button a shirt. (*Id.*). He had no difficulties sitting, standing, or walking, and he was independent in all activities of daily living, including cooking/meal prep, personal care, housekeeping, laundry, shopping/banking, and driving. (*Id.*). Hampton's physical exam with Ms. Sanford revealed normal findings, and she found he had normal range of motion for all areas, including his hands. (*Id.* at 451-54). Regarding Hampton's prostate cancer, Ms. Sanford noted Hampton had surgery but no chemotherapy or radiation. (*Id.* at 455). She further observed that Hampton had no limitations from the carpal tunnel repair surgery. (*Id.*).

In September 2023, State Agency medical consultant Victoria L. Hogan, MD, conducted another review of Hampton's case. (*Id.* at 63). Like Dr. Cantrell,

she assessed non-severe MDIs of prostate cancer and type 2 diabetes and opined that Hampton was not disabled. (*Id.* at 65).

Hampton's treatment records with Michael Pullman, MD, for prostate cancer documented a "fairly well recovery." (*Id.* at 16). Despite Hampton's recovery from prostate surgery, the ALJ considered Hampton's subjective allegations and concluded he could have periods of fatigue resulting from the surgery. (*Id.* at 15). Regarding Hampton's carpal tunnel syndrome, the ALJ stated:

> Considering the overall record including signs and symptoms since the surgery for example, the undersigned finds it reasonable to include manipulative limitations for handling and fingering related to the right upper extremity to frequently. Nevertheless, there is insufficient evidence for additional or more restrictive limitations based on the existing evidence for the right side while there is just not enough support for the inclusion of additional limitations regarding the left upper extremity in the claimant's residual functional capacity.

(*Id.* at 17). The ALJ found no serious complaints in the medical record relating to Hampton's diagnoses for either diabetes or anemia. (*Id.* at 17). For example, Hampton had no neuropathy, retinopathy, or proteinuria, and his blood sugar was generally normal with treatment. (*Id.*). She therefore concluded these impairments were non-severe. (*Id.*).

Because the ALJ found Hampton had severe impairments from his right hand and prostate cancer residuals, she concluded the opinions of Dr. Cantrell, Dr. Hogan, and Ms. Sanford were not persuasive because the record reflected Hampton would have "more than minimally residual effects" from his prostate cancer and

carpal tunnel syndrome. (*Id.* at 21). "Based on these impairments, [Hampton] would be limited to less than a full range of medium exertional work with manipulative limitations added as well." (*Id.*). She reasoned Hampton had "light exertional limitations with a number of non-exertional limitations from the combined effects of his severe impairments." (*Id*). However, the ALJ found the record did not support Hampton's allegations that he was so limited as to preclude basically all work. (*Id.*).

At the fourth step, the ALJ found Hampton could perform his past relevant work relying on the vocational expert's ("VE") testimony that based on Hampton's age, education, and RFC, he would be able to work as a maintenance electrician. (*Id.* at 22). Further, the VE testified that an individual with Hampton's age, education, and RFC could perform other jobs that exist in the national economy. (*Id.* at 22-23). Proceeding to the final step, the ALJ noted Hampton was an individual closely approaching retirement on the alleged disability onset date. (*Id.* at 22). He had at least a high school education, and transferable skills were not an issue because the Medical-Vocational Rules framework supported a finding that Hampton was not disabled. (*Id.*). Nevertheless, Hampton's ability to perform a full range of medium work was impeded by additional limitations. (*Id.* at 23). Finally, the ALJ determined that based on Hampton's RFC, there were a significant number of jobs in the national economy he could perform, including floor waxer

(165,000 jobs in the national economy), hospital cleaner (145,000 jobs), and motor vehicle assembler (538,000 jobs). (*Id.* at 22-23). Based on this evidence, the ALJ ultimately concluded Hampton was not disabled since the date he filed his application and, therefore, was not entitled to benefits. (*Id.*).

The Appeals Council denied review of the ALJ's decision, and that decision became the final decision of the Commissioner. (*Id.* at 1); *see Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Hampton filed this action. (Doc. 1).

## II. Standard of Review

A court's role in reviewing claims brought under the Social Security Act is narrow. Its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court defers to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but closely scrutinizes the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing

court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. Analysis

Hampton challenges the ALJ's decision on two grounds. First, he contends the ALJ's RFC determination was not supported by substantial evidence because she failed to sufficiently develop the record. Second, he argues the ALJ did not sufficiently explain why she "rejected" Hampton's subjective statements.

### A. The RFC was supported by substantial evidence.

Hampton first cites authority that requires an ALJ to order a consultive examination and to ensure a qualified physician has completed the medical portion of the case review. (Doc. 14 at 10-11). That happened here—Ms. Sanford conducted Hampton's consultive examination, and the record was reviewed by two agency consultants. Those reviews all concluded that Hampton did not suffer from any severe impairments or functional limitations. Crediting some of Hampton's subjective complaints, the ALJ found the prostate cancer and carpal tunnel syndrome were severe impairments which could result in some functional limitations. The ALJ therefore crafted the RFC to include light restrictions, both in exertion and handling for the right hand. More specifically, the ALJ limited

10

Hampton to medium work and frequent handling and fingering with his right hand. (Tr. at 18).

It appears Hampton contends that because the ALJ found severe impairments existed, she was required to continue requesting medical opinions until she received one that included functional limitations before she could craft Hampton's RFC. However, Hampton cites no such authority, and the cases he does cite are clearly distinguishable.

In *Johnson v. Colvin*, the court found the ALJ ignored a treating physician's opinion without articulating good cause for doing so. No. 2:15-CV-1149-VEH, 2016 WL 6699303, at *5 (N.D. Ala. Nov. 15, 2016). More specifically, he disregarded a treating physician's opinion as unrelated to the period of disability, but a closer review indicated those records were related to the relevant time frame. *Id.* The court further found the ALJ erred by failing to identify a medical source statement or physical capacities evaluation completed by a physician that substantiated the plaintiff's ability to perform a full range of work given his various conditions. *Id.* Similarly, in *Stewart v. Astrue*, the court found the ALJ erred when he did not identify a medical source opinion or physical capacities evaluation conducted by a physician that substantiated the plaintiff's ability to perform a reduced range of light work despite a severe impairment. No. 5:11-CV-2103-VEH, 2012 WL 1745618, at *4 (N.D. Ala. May 14, 2012).

*Johnson* and *Stewart* are distinguishable cases because, here, there is no treating physician—or any physician—opinion that Hampton is more limited than the RFC contemplates. This is the opposite situation—the medical opinions indicate Hampton has no severe impairments or limitations, yet the ALJ considered Hampton's subjective complaints and concluded he suffered from two severe impairments and corresponding limitations.

Hampton also argues the ALJ failed to discuss all findings from Dr. Yu, thereby "paint[ing] an inaccurate picture of [Hampton's] condition, giving the impression that his release surgery resolved his conditions." This is inaccurate. The ALJ's opinion discussed Dr. Yu's exams at length and specifically cited his December 2023 report that Hampton (1) continued to have persistent numbness in the median nerve and discomfort in the palm with grasping activities and (2) could have permanent numbness in the median nerve. (Tr. at 16). The ALJ noted the contrast between Dr. Yu's notes and Ms. Sanford's normal findings and concluded Dr. Yu's findings indicated a need to incorporate manipulative limitations for the right hand.[3] (*Id.* at 17, 20).

Hampton's contention that the ALJ failed to explain why she credited Ms. Sanford's normal findings over Dr. Yu's abnormal findings is similarly misguided.

---

[3] Hampton does not cite, and the court cannot locate, any suggestion by Dr. Yu that Hampton has restrictions beyond those crafted by the ALJ in the RFC.

Ms. Sanford concluded Hampton had no limitations arising from his carpal tunnel release surgery. Crediting Ms. Sanford's opinion in full would have resulted in an RFC that included no handling limitations. The ALJ's conclusion that Hampton's carpal tunnel syndrome constituted a severe impairment necessitating handling limitations demonstrates the ALJ considered and credited Dr. Yu's examination findings and Hampton's subjective complaints. Nevertheless, the ALJ concluded the record as a whole reflected Hampton was not substantially limited by the carpal tunnel syndrome and therefore assigned only light restrictions in his ability to handle.

The responsibility for assessing a claimant's RFC rests with the ALJ, whose determination is to be "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), 404.1546(c), 416.946(c); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). The regulations do not require the ALJ to base her RFC on an RFC assessment from a medical source, so the failure to include a medical source opinion does not necessarily render the ALJ's RFC assessment invalid. *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011). Moreover, it is Hampton's "burden to provide the relevant medical and other evidence that he [] believes will prove disabling physical or

mental functional limitations." *Bear v. Astrue*, 838 F. Supp. 2d 1267, 1273 (M.D. Fla. 2011) (citations omitted).

Hampton has not met his burden. Though he complains about the RFC assessment, he points to no evidence in the record that supports a more restrictive RFC than that created by the ALJ. His contention that the ALJ should have collected more medical opinions is without merit. The ALJ collected three opinions and, based on her consideration of the record as a whole, ultimately assessed a more restrictive RFC than suggested by the consultive examiner and state agency consultants. Her decision was therefore supported by substantial evidence.

**B. The ALJ sufficiently explained why she discounted Hampton's subjective statements.**

Hampton also asserts the ALJ violated SSR 16-3p by failing to explain why she discredited his subjective statements. More specifically, he contends the ALJ did not point to any "genuine inconsistencies between [Hampton's] testimony and the other evidence in this record." (Doc. 14 at 17). The court disagrees.

Standing alone, Hampton's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if also supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.

14

1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); *Soc. Sec. Ruling 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms, but the plaintiff establishes he has an impairment that could reasonably be expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225−26. To discredit a plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The question is not . . . whether [the] ALJ could have reasonably credited [Hampton's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548−49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard.

As explained above, the ALJ discussed the medical opinions and other evidence in the record at length. She disagreed with the medical opinions finding no severe impairments (and thus no limitations) when reasoning Hampton "could have some manipulative limitations for the right side due to his right severe carpal tunnel." (Tr. at 19). The ALJ compared Dr. Yu's notes following Hampton's carpal tunnel surgery with Ms. Sanford's examination and found significant that Ms. Sanford's August 2023 examination of Hampton was entirely normal and revealed no range of motion abnormalities. (*Id.* at 20). Nevertheless, considering the record as a whole, the ALJ concluded Hampton could have "more than minimally residual effects" regarding his right hand, indicating a need to incorporate manipulative limitations into the RFC. (*Id.* at 21). This conclusion indicates the ALJ considered both Hampton's subjective complaints and Dr. Yu's clinical notes in finding

16

Hampton had more restrictive limitations than those found by Dr. Cantrell, Dr. Hogan, and Ms. Sanford. As to Hampton's subjective complaints,[4] the ALJ found that while Hampton "alleged limitations that would preclude regular and continuous work at even the most restrictive ranges of sedentary exertion, the nature, scope, and findings from the longitudinal record and objective testing do not support the intensity or persistence of subjective allegations." (Tr. at 21). Thus, contrary to Hampton's arguments, the ALJ adequately explained that she gave some credence to Hampton's subjective complaints but the severity of those complaints was not supported by the medical record as a whole.

The ALJ reviewed the complete medical record to support her conclusion, and substantial evidence supports her decision. She determined Hampton had two severe medical conditions, but the objective medical evidence—which contained no suggestion Hampton was unable to perform work activities—was inconsistent with the severity of his subjective complaints. This is a clearly articulated, explicit, and adequate reason to discount Hampton's reports about the limitations of his right hand. The question is not whether the ALJ could have reasonably credited Hampton's testimony but whether she was clearly wrong to discredit it. *Werner*, 421 F. App'x at 939. She was not. Instead, the ALJ articulated in detail her

---

[4] Notably, Hampton does not cite any specific, subjective complaint that he contends the ALJ wrongly discredited.

findings that Hampton's subjective complaints were inconsistent with the medical evidence of record, and substantial evidence supports her determination.

## IV. Conclusion

Upon review of the administrative record and considering all Hampton's arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 25th day of March, 2026.

_____

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE